In the Matter of the Accounting of GUISIPPINA PARAS-CANDOLA, as Administratrix with the Will Annexed of JOSEPH AUDITORE, Deceased, Respondent, *v.* NATIONAL SURETY COMPANY et al., Appellants.

MECHANICS BANK, as Trustee, et al., Respondents.

336

(Argued October 5, 1928; decided November 20, 1928.)

338

James F. Donnelly and Mark Eisner for National Surety Company, appellant. The judgment obtained in the Supreme Court is res adjudicata against respondent-petitioner, and she is bound by the estoppel of such judgment. (Bouchaud v. Dias, 3 Den. 238; Henriques v. General Privileged Dutch Co., 2 Ld. Raym. 1532; Trogden v. Cleveland Stone Co., 53 Ill. App. 206; Darrell v. Hilligoss, etc., Gravel Road Co., 90 Ind. 264; Lillard v. Porter, 2 Head [Tenn.], 177; Clausen v. Head, 110 Wis. 405; Houghton v. Thomas, 220 App. Div. 415; Dodds v. McColgan, 222 App. Div. 126; Mattey Const. Co. v. The Junction, Inc., 170 N. Y. Supp. 35; Brock v. Poor, 216 N. Y. 387; Feinberg v. Allen, 208 N. Y. 215; Buck v. Hunter, 98 Vt. 163; Fulsom v. Mason, 107 Okla. 70; Kavanaugh v. Commonwealth Trust Co., 181 N. Y. 121; Niles v. N. Y. C., etc., R. R. Co., 176 N. Y.

119; *Leonard* v. *Pierce*, 94 App. Div. 266; 182 N. Y. 431; *Steinbach* v. *Relief F. Ins. Co.*, 77 N. Y. 498; *Collins* v. *Bennett*, 46 N. Y. 490; *International Paper Co.* v. *Purdy*, 136 App. Div. 189; *Boyd* v. *Boyd*, 53 App. Div. 152; *Baker* v. *Rand*, 13 Barb. 152; *Gardner* v. *Buckbee*, 3 Cow. 120; *Johnson* v. *Smith*, 8 Johns. 383; *Bracken* v. *Atlantic Trust Co.*, 42 App. Div. 621; 167 N. Y. 510; *Stowell* v. *Chamberlain*, 60 N. Y. 272; *Fulton* v. *Canno*, 200 App. Div. 253.) The Surrogate neither possesses jurisdiction nor power to declare that the moneys belonging to Auditore Contracting Co., Inc., and Auditore Company of New York and which were misappropriated by Frank Auditore, for which a judgment has been obtained against Frank Auditore, that as to one-half of the amount misappropriated it was to be considered a dividend or informal distribution of assets which was due and diverted from the estate and that Frank Auditore and his surety, National Surety Company, be surcharged therefor. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67; *Matter of Schaefer*, 65 App. Div. 378; 171 N. Y. 686; *Matter of Brown*, 78 Misc. Rep. 342; *Matter of Beach*, 122 Misc. Rep. 261; *Matter of O'Connell*, 123 Misc. Rep. 955; *Matter of Mathewson*, 210 App. Div. 572; *Matter of Hyams*, 237 N. Y. 211; *Matter of Isaacs*, 208 App. Div. 61; *Continental Tyre & Rubber Co.* v. *Daimler Co.*, 1 K. B. 893; *Almirall* v. *McClement*, 207 App. Div. 320; 239 N. Y. 630; *Brock* v. *Poor*, 216 N. Y. 387.)

*Anthony J. Ernest* for Frank Auditore, appellant. The claims of the petitioner herein are merged in the judgment recovered in the action brought by the petitioner, as administratrix of Joseph Auditore, against Frank Auditore, individually and as administrator of Joseph Auditore, deceased, and others. (*Alexander* v. *Donohue*, 143 N. Y. 203; *Singers-Bigger* v. *Young*, 166 Fed. Rep. 82; *Sullivan* v. *Baxter*, 150 Mass. 261; *Hughes* v. *Un. P. Lines*, 119 N. Y. 423; *Hamer* v. *N. Y. R. Co.*, 244 U. S. 266; *Gutta*

*Percha Co.* v. *Mayor*, 108 N. Y. 276; *Matter of Whitney*, 146 App. Div. 45.) The prior judgment, for conversion, necessarily adjudicated that the title to property and money converted was in the corporations, Auditore Contracting Co., Inc., Auditore Co., Inc., and Auditore Company, Inc. (*Johnson* v. *Blaney*, 198 N. Y. 312; *Marsden* v. *Cornell*, 62 N. Y. 223; *Rosenberg* v. *Lewis*, 210 App. Div. 690; *Ellis* v. *Feeney*, 187 App. Div. 481; 236 N. Y. 565; *Salisbury* v. *Segal*, 189 App. Div. 400; *Island T. Co.* v. *Berg*, 239 N. Y. 239; *Tuska* v. *O'Brien*, 68 N. Y. 449; *Hughes* v. *U. P. Lines*, 119 N. Y. 423; *F. N. Bank* v. *Valentine*, 209 N. Y. 145; *Marsden* v. *Cornell*, 62 N. Y. 223; *Oakland Co.* v. *Linde*, 162 App. Div. 543; *Dietz* v. *Field*, 10 App. Div. 425.) The petitioner has elected to take the benefit of the judgment in her favor as plaintiff in the Supreme Court action, and her claims are merged therein. (*Officer* v. *Owens Co.*, 252 Fed. Rep. 337; Amer. Encyc. [2d ed.] 466, 479; *Bank* v. *Beale*, 34 N. Y. 473; *American Woolen Co.* v. *Samuelson*, 226 N. Y. 61; *Assets Realization Co.* v. *Roth*, 226 N. Y. 374; *Sanborn* v. *Sanborn*, 106 Ohio St. 641; *U. S. & City of New York* v. *Benedict*, 261 U. S. 294; *Fields* v. *Bland*, 81 N. Y. 239; *Terry* v. *Munger*, 121 N. Y. 161; *Droege* v. *Ahrens & Ott Mfg. Co.*, 163 N. Y. 466.)

*Edward H. Wilson* and *John J. Kean* for executrix, et al., respondents. The Parascandola judgment constitutes no estoppel. (*Kavanaugh* v. *Commonwealth Trust Co.*, 181 N. Y. 121; *Simpson* v. *Simpson*, 44 App. Div. 492; *Matter of Slingerland*, 36 Hun, 575; *Matter of Ehret*, 70 Misc. Rep. 567; *Jasper* v. *Rozinski*, 228 N. Y. 349.) Frank Auditore, as administrator, was liable for the sums charged against him and his surety is liable. (*Burden* v. *Burden*, 159 N. Y. 287; *Hiscock* v. *Lacy*, 9 Misc. Rep. 578; Wormser, Disregard of Corporate Fiction & Allied Problems, 170; *Harrington* v. *Keteltas*, 92 N. Y. 40;

*O'Connor* v. *Gifford,* 117 N. Y. 275; *McQuaide* v. *Perot,* 223 N. Y. 75; *Matter of Allmann,* 228 N. Y. 512; *Matter of Griefenstein,* 86 Misc. Rep. 173; *Matter of Friedlander,* 189 App. Div. 90; *Northup* v. *Northup,* 92 App. Div. 5. The decree was properly entered against the surety company in this proceeding. (*Matter of Spaulding,* 112 Misc. Rep. 317; *Matter of Tilden,* 118 Misc. Rep. 729; Jessup-Redf. Surr. Pr. [1925 ed.] 938; *Kelly* v. *West,* 80 N. Y. 139; *Altman* v. *Hofeller,* 152 N. Y. 498; *Bodine* v. *Williamson,* 134 App. Div. 688; *Hood* v. *Hayward,* 124 N. Y. 1; *Fassbender* v. *American Surety Co.,* 66 Misc. Rep. 6.)

*Thomas Craddock Hughes* for Pauline Auditore et al., respondents. Neither under the rule of *res adjudicata* nor on the theory of estoppel is the administratrix barred from the relief asked for and granted by the decree appealed from. (*Griffin* v. *Keese,* 187 N. Y. 454; *Rudd* v. *Cornell,* 171 N. Y. 114; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Townsley* v. *Niagara Life Ins. Co.,* 218 N. Y. 228; *Wager* v. *Wager,* 89 N. Y. 161.)

CRANE, J. The case of *General Rubber Co.* v. *Benedict* (215 N. Y. 18) is authority for the principle applied by the courts below. Frank Auditore occupied two positions of trust; one as an officer and director of the Auditore Contracting Co., Inc., and the other as administrator with the will annexed of the estate of his brother Joseph Auditore.

For the misappropriations of the corporate funds by Frank, he has been held liable to the corporation in a suit brought in its behalf by a stockholder. The judgment has not been paid. The estate of Joseph Auditore owned fifty per cent of the stock. This was held in trust for the estate by Frank Auditore as administrator. As such he owed to the estate an active duty to use diligence and care to preserve its value and prevent its loss. By wrongfully taking all the assets of the corporation and applying

them to his own use, he violated this trust and destroyed or lowered the value of this stock or the assets of the estate. For the damage done he and his surety should be held liable. The damage is the reduced value of the stock due to Frank's misappropriations while administrator. The judgment recovered by the corporation is no bar to this proceeding. The remedies are not inconsistent; they are applied to different duties and relationships. The money taken or used by Frank is not a dividend of the corporation received by him as administrator, nor do we have to ignore the corporation or the corporate form. The action by the corporation stands. If its judgment had been paid, no harm would have been done the assets of the estate. It has not been paid and the stock has become valueless. The loss of value is due to the act of the one chosen to sustain its worth. The trustee is liable for the loss in value which he has occasioned. Of course if the liabilities of the corporation exceeded its assets there could be no damage done. The value depends upon the financial condition of the corporation as of the time of Frank's appointment as administrator and his misappropriations.

If we take as illustration an extreme case, we will at once, I think, see clearly the application of this principle. A president of a corporation is made administrator of an estate owning ninety per cent of the stock. The stock is worth par. The president steals all the assets of the corporation and the stock becomes valueless. The corporation can sue him for his misappropriations, but if he be insolvent, the stock remains valueless. He owed a duty to the estate as a trustee of its assets. Has he betrayed that trust? The shares of stock which he held as administrator have value because of the proportional interest in the capital of the company. The administrator has stolen and misappropriated that capital. His deed has caused an actual loss to the estate by rendering

the stock valueless. Can it be that the only breach of duty was that which he owed the corporation as an officer and that this absorbs and swallows up the duty which he owed the estate? His bond as administrator was given for the faithful performance of his duties as administrator. He has failed in his duty as administrator; his theft has caused a loss. This illustration probably is unnecessary, for it states the exact facts of this case. The findings are that Frank Auditore, as administrator of his brother's estate, held fifty per cent of the stock of the Auditore Contracting Co., Inc. He was also an officer and director of the corporation owning the other half of the stock. He took all the assets rendering the stock valueless as he became insolvent. The judgment recovered against him by the company requiring him to put back the assets was unenforceable as Frank Auditore has no property. Body execution has been issued against him and he has spent six months in jail. Under these circumstances, is the estate which he represents powerless? Has he faithfully performed his duties as administrator? The only answer that can possibly be given is that he has not. The surety company undertook by its bond to be liable for his faithless performance. His breach of duty as an officer of the corporation does not expunge or obliterate his breach of duty as administrator.

This is a much clearer case for the application of this principle than *General Rubber Co.* v. *Benedict (supra).* There the defendant was a director of a New Jersey company which owned all the stock of a subsidiary known as the Brazilian company. The general manager of the Brazilian company, one named Hutter, took the assets of the Brazilian company and misapplied them to such an extent as to reduce the value of the stock of the Brazilian company held by the New Jersey company. The defalcations and misappropriations of the general manager injured the stock held by a third party. The defendant

was not a director of the Brazilian company, but he was a director of the owner. He knew of the defalcations. He was in a position to prevent them, but instead of preventing them acquiesced in them. Unlike the *Auditore* case, he did not himself steal the money, but he knew that it was being misapplied. His silence and acquiescence would not have created any liability, but for one thing. He was in a position where he was called upon to act. He was a director in the company which owned the stock and as such director was a trustee of its property with a duty to protect it and a duty to speak. This court said that his failure to be vigilant or informative made him liable to the owner of the stock for the loss occasioned in the depreciation of that stock traceable to his breach of trust. The Brazilian company of course had an action against Hutter as general manager to recover the funds taken by him. If Benedict, the defendant in the case, had stolen the money instead of Hutter, the fact that the Brazilian company would have had a cause of action against him, whether officer or stranger, to recover the moneys taken, would in no way have barred the independent cause of action for a breach of duty which Benedict owed as a director of the New Jersey company which owned the stock. The amount collected in the action by the Brazilian company of course would have reduced the loss or the damage, but would not have affected the rights and remedies.

The Appellate Division has remitted the proceeding to the Surrogate to ascertain the claims of the creditors of the corporation. We are of the opinion that the rehearing should not be limited but that the Surrogate should ascertain the value of the stock and its depreciation due to the illegal acts of the administrator, *i. e.*, the damage done to the value of the stock. This may require the examination of many items of assets and liabilities. The value of the stock is to be determined as in any

other case.  The Surrogate is not dealing with the corporation but with the value of its stock at specified times.

We notice that two or more of the items for which Frank Auditore and his bonding company have been held liable refer to alleged misappropriations of corporate funds prior to August 18, 1920, the date of the letters of administration.  The surcharges as they may be called in two instances go back to June of 1920.  This gives rise to a different question.  These misappropriations occurred before Frank Auditore became administrator.  The bonding company is only liable for his acts as administrator.  Was there any duty which the administrator owed regarding the funds misappropriated by him before he became administrator?

Debts due the estate were to be collected.  The administrator and his bondsman would be liable for any neglect in gathering in the assets of the estate.  If the administrator himself owed money to the estate it would be his duty to pay it.  If he could have paid the amount of his indebtedness, but delayed doing so until he was insolvent, the bondsman might be liable for this loss dependent upon the circumstances.  Here, however, we have through the misappropriations of Frank Auditore prior to his appointment as administrator claims due from him to the corporation, the Auditore Contracting Co., Inc.  What duty did he owe to the estate regarding his indebtedness to the corporation?  Permit me to answer it by using an illustration.  Suppose Frank Auditore, as administrator, had in his possession stock representing nearly all the capital in the corporation.  The stock was worth par.  The administrator had knowledge that an officer of the corporation had taken and misappropriated all of the capital of the company and had put it as cash in his own bank account.  This rendered the stock valueless.  Would the administrator having these facts before him

owe any duty to the estate even though the misappropriation of the president happened before the appointment of the administrator? Having the stock in his possession, the administrator could have brought action in the name of the corporation to have recovered this money from the president. (*Niles* v. *N. Y. Central & Hudson River R. R. Co.*, 176 N. Y. 119.) The corporation could have sued or upon its failure or refusal so to do, the administrator representing the stock could have brought the action. Would he have been guilty of negligence and carelessness in failing to compel the corporation to bring the action or in bringing the action himself, if he knew by so doing the money could be restored to the corporation? To put this proposition I think is to answer it. Of course if the president in my supposed case were insolvent or became insolvent before the administrator in the exercise of reasonable diligence could act, he would be guilty of no breach of duty in failing to pursue the fund.

This is the situation which confronts us as to these items of which I am speaking. Only it so happens that the administrator and the president of the corporation misappropriating the funds are one and the same person. At the time Frank Auditore was appointed administrator it was his duty to return to the corporation the moneys he had wrongfully taken. It was his duty to demand of the corporation to take action to recover those moneys, and if the corporation refused to act to bring action in the name of the corporation. If he were solvent and could have paid back the moneys, then his failure to so act would result in a loss to the estate by depreciating by just so much the value of the shares. If, on the other hand, he become insolvent within the time that an ordinarily prudent administrator would have acted under like circumstances, then he as administrator would not be liable to the estate for failure to pay back the money to the corporation or for failure to commence the appro-

priate proceedings to collect it. In other words, as to acts happening before Frank Auditore was appointed administrator, whether these be his own acts or the acts of third parties, he and his bondsman are only liable for negligence, the failure to pursue that diligence which reasonably prudent and careful men would use. But as to the things which happened after he was appointed administrator, he is- here held liable not for negligence or carelessness, but for his own acts of misappropriation, for the larcenies which he committed, resulting in loss to the estate. As to both items, whether those before his appointment as administrator or those afterwards, the basis of the liability, if any, is the breach of trust. The breach, however, is determined by a different measure; the one by negligence, the other by misappropriation. The one includes the element of solvency and ability to collect, the other has in it no such consideration; the administrator and his bondsman are liable for the misappropriations irrespective of the solvency of the administrator.

The perplexity has here arisen by reason of the administrator being a director and officer of a corporation, and also an administrator of an estate interested in that corporation. He holds dual trust positions. The matter is simplified when we separate these capacities and consider what would be the administrator's duty if a third party officer of the corporation had stolen the funds.

The courts below have had the main principle in mind and attempted to apply it. The Surrogate sought to approach the matter by considering the moneys taken by Frank Auditore from the corporation in the nature of dividends of the corporation which he held in trust for the estate. The Appellate Division sustaining the Surrogate in part thought that the corporate entity of the Auditore Contracting Co., Inc., might be ignored, and remitted the matter to the Surrogate to take proof of

the debts of the corporation as bearing upon the value of the stock. We think the whole matter should be remitted to the Surrogate for a rehearing.

The order of the Appellate Division should, therefore, be modified in accordance with this opinion and the matter remitted to the Surrogate's Court for further proceedings in accordance with the decision of this court.

As explained or qualified in opinion the questions certified should be answered: No. 1, "No;" Nos. 4, 6, 7, 8, "Yes." Questions Nos. 2, 3 and 5, not answered.

LEHMAN, J. (dissenting). Joseph Auditore and his brother Frank Auditore each owned fifty per cent of the corporate stock of Auditore Contracting Co., Inc., and together managed its corporate affairs. Joseph Auditore died May 9th, 1920. Letters of administration with the will annexed were issued to his wife, Guisippina, and to Frank Auditore, on August 18th, 1920. The National Surety Company executed its bond as surety for the administrators. From the death of Joseph Auditore, Frank Auditore continued to control the corporate affairs of the Auditore Contracting Company, Inc., with one Joseph Stockham who was elected secretary and a director thereof on June 10th, 1920. Together they appropriated to their own use corporate property. Thereafter Guisippina Parascandola, the former wife of Joseph Auditore, as administratrix of his estate brought a representative action in behalf of the corporation against Frank Auditore and Joseph Stockham to recover the corporate property appropriated by them. The action resulted in an adjudication that Frank Auditore and Stockham had looted the corporate treasury, and a final judgment was made and entered in favor of the corporation for the amount stolen. That judgment has never been paid and probably is uncollectible.

Frank Auditore has, of course, been removed as admin-

istrator of the estate of Joseph Auditore. He has proven himself a faithless guardian of that estate. Upon the settlement of the accounts of Guisippina Parascandola a decree has been entered charging Frank Auditore, as former administrator, with the sum of $208,143.75, which is one-half of the amount of corporate property which Frank Auditore diverted and which, the courts below held, would have come to the estate if the corporate funds had not been diverted from the corporate treasury into the pockets of Frank Auditore and Stockham. There is no more probability that the amount found due to the estate can be collected from Frank Auditore than the amount found due to the corporation, but the decree which charges Frank Auditore with half the amount of his peculations from the corporation which he controlled also grants judgment for the same amount against the surety company as surety of the administrators.

Unquestionably the evidence establishes that Frank Auditore stole corporate funds through his control of the corporation. Unquestionably his theft reduced the value of the corporate stock belonging to the estate of which he was an administrator, though the assets he stole belonged to the corporation and not to the stockholders. The decision of the courts below that, as administrator, he or his surety must make good the damage to the assets of the estate through his theft of the property of the corporation, in which the estate is a stockholder, has been based upon the view that there are circumstances in this case which may properly lead the court to disregard the concept of a corporate entity apart from the stockholders. This court is about to affirm the judgment of the courts below on the theory that though we may not disregard the corporate entity which, at the suit of the administrator of the estate, has recovered a judgment against its faithless officer, the estate of Joseph Auditore is also entitled to a judgment against its faithless administrator

for damages caused to the estate by the breach of some duty owed to it. This court finds authority for its decision in *General Rubber Company* v. *Benedict* (215 N. Y. 18).

In that case the defendant was a director of the plaintiff corporation. He knew that the president of a subsidiary company whose capital stock was owned by the plaintiff was stealing the assets of the corporation. The defendant, knowing these facts, perhaps even acting in collusion with the dishonest president of the subsidiary corporation, neglected to inform the plaintiff. " He withheld and concealed the truth, so it is charged, intentionally and for his own profit." The defendant was not a director of the subsidiary corporation. " He is liable to it, if at all, only as a stranger might be liable. If he has joined in a conspiracy to plunder it, he must, like any other tort feasor, make compensation for the plunder." As a director of the plaintiff corporation the defendant owed to it a duty of fidelity and care. That duty the defendant breached, and for the consequent depreciation in the value of the stock owned by the plaintiff this court held that the defendant was liable directly to the plaintiff, regardless of whether or not the defendant was also liable to the subsidiary corporation for the conversion of its assets.

The opinion in *General Rubber Co.* v. *Benedict* (*supra*) distinguishes such cases as *Smith* v. *Hurd* (12 Metcalf, 371); *Niles* v. *N. Y. C. & H. R. R. R. Co.* (176 N. Y. 119), in which it was held that an individual stockholder has no right of action in his own behalf against one who has injured the corporation, however much the wrongful acts have depreciated the value of his shares, and this court adopted the language of Taft, J., in *Ritchie* v. *McMullen* (79 Fed. Rep. 522) that " we are of opinion that this principle has no application where the wrongful acts are not only wrongs against the corporation, but are also violations by the wrongdoer of a duty arising from

contract or otherwise, and owing directly by him to the stockholders."

The language of that statement, torn from its context and read without regard for the reason of the rule and its application to the particular circumstances to which it was intended to apply, is, perhaps, broad enough to constitute authority for the decision which this court is now about to make. Language in an opinion may not be so read. Though there is no privity between a director of a corporation and a stockholder, it can hardly be said that a director does not occupy a fiduciary relationship to the stockholders. The corporate entity stands between the stockholders and the directors, but the doctrine of a corporate entity may not blind us to the fact that a director of a corporation owes some duty, even if indirect, of good faith and honesty to all those who are interested in the assets of the corporation, be they stockholders or even creditors. The limits of that duty need not now be decided. Certainly the duty not to steal is sufficiently broad that it applies towards all who may be injured by the theft, and the sound reason why a stockholder ordinarily has no individual right of action for waste of the corporate property is that ordinarily a stockholder suffers no damage, of which the law takes cognizance, by waste of corporate assets. Those assets in law belong only to the corporate entity. The individual stockholders have no direct interest in those assets and hence suffer no injury, for which they may seek redress in the courts. Other holding would be in disregard of the doctrine of a corporate entity under circumstances and for purposes in which it was peculiarly intended to apply. Damage to the stockholders arises only indirectly through damage done to the corporation, and may be redressed only by action which seeks reimbursement for the corporation. (See opinion in *Smith* v. *Hurd*, *supra*.) Breach of a duty which is directly owed to a stockholder may, however,

also result in direct damage to the stockholder, which cannot be repaired by a representative action in behalf of the corporation. " The duty and the breach, coupled * * * with damage, make out a cause of action." That is the reasoned basis of the decision in *General Rubber Co.* v. *Benedict (supra).*

It is to be noted that in all the cases cited in that opinion, including the case of *Ritchie* v. *McMullen (supra),* the " duty owed directly " by the wrongdoer to the stockholders was broader than any duty to the corporation not to waste the corporate assets, and gave rise to direct damage which ordinarily could not be made good by reimbursement to the corporation. Waste of assets in those cases constituted merely the means by which injury was directly inflicted upon the aggrieved stockholder. Where directors waste the assets of a corporation as part of a successful scheme to acquire the stock of the corporation at a depressed price, it would be idle to say that the only remedy left open to the wronged stockholder who has parted with his stock is by a representative action which would result only in an increase in the value of the stock in the hands of the wrongdoer. In the case of *General Rubber Co.* v. *Benedict,* it is true, all damage to the stockholder would be repaired if the corporation were made whole for the waste of its assets. In that case, however, the court pointed out that " the defendant was not a director of the subsidiary company. He was a director of the plaintiff " which in turn owned the stock of the subsidiary company whose assets were wasted. That circumstance I think was decisive. As a director the defendant owed a duty of care to the plaintiff corporation. He owed no such duty to the corporation whose assets were wasted. True, " if he has joined in a conspiracy to plunder it, he must, like any other tort feasor, make compensation for the plunder," but he was not sued for conversion but for failure to do his duty as a director. Only the plaintiff might sue for failure

to perform that duty and the court pointed out that under the circumstances "the breach of that duty, and the resulting damage, would seem to call for the application of a principle that there is no wrong without a remedy." Wrong and damage to the shareholder was not merely an indirect result of wrong to the corporation, for as to the corporation there may have been no wrong. In that action the question of whether the defendant had also committed some further wrong to the corporation by plundering it was irrelevant, except that, as the court expressly pointed out, proof that the corporation could itself collect damages for the waste of its assets, either from the defendant of any other wrongdoer, would reduce or perhaps even eliminate any damages which the stockholder might recover against the defendant for breach of a duty directly and peculiarly owed to the public.

Therein lies, I think, a decisive distinction between the case of *General Rubber Co.* v. *Benedict* and the present case. In both cases the wrongdoer occupied a fiduciary relation to a shareholder of a corporation. In both cases he was false to his trust. There, I think, analogy ceases. In the former case there was a breach of duty to the shareholder alone, and that breach was completely independent of any wrong to the corporation, indeed as to it there may have been no wrong. Here the shareholder shows and can show no breach of duty to the shareholder except by proof that the defendant wasted the assets of the corporation. The shareholder has not been wronged except indirectly through wrong to the corporation by the waste of its assets. True, the wrongdoer owed not only a direct duty to the corporation and an indirect duty to its shareholders as such, but also a direct duty to the estate of Joseph Auditore because of his special fiduciary relationship to it, but his breach of all these duties was the same. He has been a faithless

administrator only because he has stolen the assets of the corporation. He stole no assets of the estate, and the estate has not been injured by the waste of corporate assets, except indirectly. For loss indirectly suffered by the shareholder through wrong to the corporation, the shareholder has never been accorded an individual right of action. In *Ritchie* v. *McMullen* (*supra*) and the cases there cited, there was a direct wrong to a shareholder beyond the waste of assets which caused the shareholders direct damage which would not be repaired even by complete restitution to the corporation. In *General Rubber Co.* v. *Benedict* the shareholders' cause of action was for a breach of a direct duty which was entirely independent of a waste by the wrongdoer of the corporate assets and might be proven even if the defendant was guilty of no wrong to the corporation. Here the defendant is being held liable as administrator for damages indirectly caused to the estate by his wrongful diversion of corporate funds perpetrated as a corporate officer. Distinctions which seem to me without substance between the acts of an administrator and a corporate officer are drawn to fasten upon the administrator's surety liability for damages resulting indirectly to the estate from a wrong to the corporation committed by an officer of the corporation, and which falls entirely without the purview of the bond when reasonably construed.

What I have said is intended to apply to the entire decree against the administrator and his surety. It applies, I think, with special force to that part of the decision of this court which holds Frank Auditore as administrator and his surety liable to the estate for damages caused by the theft of corporate assets even prior to his appointment as administrator. Concededly at that time no privity of any kind existed between Auditore and that estate. Theft or waste of corporate assets were at that time concededly a wrong only to the corporation, and the estate as shareholder had no cause

of action against the wrongdoer. The theft gave rise only to a debt to the corporation, and not a debt to the stockholder. Only through his control of the corporation or by an action brought in its behalf could Frank Auditore have compelled restitution. His failure to bring such an action and to collect the damages may again have constituted a wrong to the corporation; it constituted no independent wrong to any stockholder as such, and I fail to see how a direct wrong to the corporation which constitutes no injury to its stockholders can become an injury to a particular stockholder merely because the man who wronged the corporation occupied a special fiduciary relation to the stockholder. To permit a recovery by the stockholder for wrong to it, there must be proof that independently of the wrong done to the corporation there was a wrong done to the stockholder. A wrong to the corporation may become morally greater when the wrongdoer stood in a fiduciary relationship to a stockholder, but when the only breach of a duty owed by the wrongdoer to the stockholder is a waste of corporate assets causing no direct damage to the shareholder, I fail to see any sound ground for transmuting the injury done to the corporation into an injury to the stockholder in order to create a new liability against the surety on the administrator's bond.

For these reasons I think the decree should be reversed.

Cardozo, Ch. J., Pound, Andrews and O'Brien, JJ., concur with Crane, J., Lehman, J., dissents in opinion in which Kellogg, J., concurs.

Ordered accordingly.