In the Matter of the Accounting of GUISIPPINA PARASCANDOLA, as Administratrix with the Will Annexed of the Estate of JOSEPH AUDITORE, Deceased.

JOHN J. KEAN et al., Appellants; JENNIE PARASCANDOLA et al., Respondents.

Argued April 12, 1938; decided May 24, 1938.

*Edward H. Wilson* and *John J. Kean*, appellants in person. The Surrogate's Court had no jurisdiction of the counterclaims asserted by the respondents. (*Matter of Connell*, 196 App. Div. 639; *Matter of Thompson*, 184 N. Y. 36; *Klein* v. *Board of Supervisors*, 282 U. S. 19; *Pagel, Horton & Co.* v. *Harmon Paper Co.*, 236 App. Div. 47; *Matter of Dollar*, 103 Misc. Rep. 137; 231 N. Y. 545; *Schell* v. *Mayor*, 128 N. Y. 67; *Matter of Langslow*, 167 N. Y. 314; *Matter of Bailey* v. *Rutherford*, 242 N. Y. 220; *Matter of Proctor*, 267 N. Y. 109; *Matter of Hammer*, 237 App. Div. 497; 261 N. Y. 677; *Matter of O'Brien*, 146 Misc. Rep. 555; *Matter of Wilson*, 252 N. Y. 155.) Assuming that there was jurisdiction in the Surrogate's Court to make a determination as to the respondents' counterclaims, the trial and the result were replete with reversible errors. (*Sokoloff* v. *National City Bank*, 130 Misc. Rep. 66; 223 App. Div. 754; *Kingston Bank* v. *Gay*, 19 Barb. 459; *Persons* v. *Gardner*, 122 App. Div. 167; *Luckenbach* v. *McCann Sugar Co.*, 248 U. S. 139; *Matter of Sheldon*, 118 App. Div. 488; *Tennant* v. *Dudley*, 144 N. Y. 504; *Merkling* v. *Ford Motor Co.*, 251 App. Div. 89; *Matter of Hopson*, 213 App. Div. 395; *Hartley* v. *Eagle Ins. Co.*, 222 N. Y. 178; *Matter of Montgomery*, 158 Misc. Rep. 412; 248 App. Div. 809; 272 N. Y. 323; *Gallin* v. *National City Bank*, 152 Misc. Rep. 679; *Seitz* v. *Union Brass & Mutual Mfg. Co.*, 152 Minn. 460; *Robertson* v. *Schoonmaker*, 158 Misc. Rep. 627; *People* v. *Equitable Life Assur. Society*, 124 App. Div. 714.) The Surrogate and the Appellate Division failed to consider properly the value of the services rendered by the petitioners

specified in the petitions. (*Matter of Steinberg*, 153 Misc. Rep. 339; *Matter of Starbuck*, 221 App. Div. 702; 248 N. Y. 555; *Morehouse* v. *Brooklyn Heights R. R. Co.*, 123 App. Div. 680; 195 N. Y. 537; *Grant* v. *Fletcher*, 283 Fed. Rep. 243; *Hutchinson Box Board & Paper Co.* v. *Van Horn*, 299 Fed. Rep. 424; *Randall* v. *Packard*, 142 N. Y. 47; *People* v. *Bond St. Sav. Bank*, 10 Abb. N. C. 15; *Glidden* v. *Cowen*, 123 Fed. Rep. 48; *Prager* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 245 N. Y. 1; *Preston Co.* v. *Funkhouser*, 261 N. Y. 140.)

Peter A. McCabe and Robert E. Lee for Jennie Parascandola et al., respondents. The Surrogate had jurisdiction. (*Matter of Rosenberg*, 263 N. Y. 357; *Matter of Anderson*, 257 N. Y. 592; *Matter of Bucken* v. *Busch*, 203 App. Div. 717; *Matter of Hess*, 133 App. Div. 654; *Schell* v. *Mayor*, 128 N. Y. 67; *Anderson* v. *New York & Harlem R. R. Co.*, 150 App. Div. 432; *Matter of Dollar*, 231 N. Y. 545; *Matter of Morris*, 134 Misc. Rep. 374; *Matter of Raymond* v. *Davis*, 248 N. Y. 67.) All moneys received by appellants for services were properly considered in applying the principle of *quantum meruit*. (*Randall* v. *Packard*, 142 N. Y. 47; *Hubbard* v. *Hubbard*, 242 App. Div. 749; *People* v. *Knickerbocker Trust Co.*, 127 App. Div. 215.) The appellants are answerable for their conduct as attorneys and fiduciaries. (*Matter of Langdon*, 139 Misc. Rep. 379; *Keating* v. *Hammerstein*, 125 Misc. Rep. 334; *Quaid* v. *Ratkowsky*, 183 App. Div. 428; *Page* v. *Arkansas National Gas Corp.*, 53 Fed. Rep. [2d] 27; *Finch Co.* v. *Robie*, 12 Fed. Rep. [2d] 360; *Meinhard* v. *Salmon*, 249 N. Y. 458; *Matter of Dollar*, 103 Misc. Rep. 137; *Matter of Hulett*, 231 N. Y. 545.)

Thomas Cradock Hughes, as special guardian for Carmelo Auditore, respondent. The services rendered by the appellants to the estate corporations and the moneys which were taken from the corporate treasuries by appellants are properly cognizable in the instant proceed-

ing. (*Matter of Auditore*, 249 N. Y. 335.) The Surrogate had power to direct the appellants to refund to the estate the excess received over the sum due them. (*Matter of Anderson*, 257 N. Y. 592.)

LEHMAN, J. The testator, Joseph Auditore, died in May, 1920. His widow, Guisippina Auditore, now Guisippina Parascandola, and Frank Auditore, his brother, were appointed administrators with the will annexed of the goods, chattels and credits of the decedent. Frank Auditore violated the trust confided in him. He was removed as administrator. He and the surety upon his bond, as administrator, were held responsible for the loss caused to the estate by his breach of trust. (*Matter of Auditore*, 249 N. Y. 335.) The appellants John J. Kean and Edward H. Wilson acted as attorneys for the administratrix in the proceedings to recover for the estate the loss caused to it by the wrongful acts and neglect of Frank Auditore. As a result of their skill and work, the surety on the administrator's bond was compelled to pay to the estate the sum of $254,148.72 in October, 1931. Then the appellants filed a petition in the Surrogate's Court asking that their compensation for services rendered to the estate be fixed and determined in accordance with the provisions of section 231-a of the Surrogate's Court Act. The proceeding to fix the compensation of the appellants was consolidated with a proceeding instituted by the administratrix for the settlement of her account and on December 30, 1931, upon the consent of, or, at least, without objections from, the persons interested in the estate, an order was made by the Surrogate which provided that the sum of $50,000 be paid to the appellants " *on account* of compensation for their services rendered to the estate of Joseph Auditore." Objections to any payment of compensation beyond that amount were filed by the legatees.

The appellants filed a supplementary petition for compensation for additional services. The legatees, contend-

ing that the appellants had been overpaid, asked the court to compel the appellants to refund to the estate such alleged overpayment. The controversy was referred to a referee to hear and determine. He found " that there has been an overpayment to the attorneys in the amount of $29,305.29, and that they should be directed to refund to the estate such excess sum." His report was confirmed by the Surrogate and the order confirming the report was unanimously affirmed by the Appellate Division.

The testator, during his lifetime, was associated in the business of stevedoring and shipping with his brother Frank. The business was conducted in corporate form. For that purpose a number of corporations were formed to conduct the enterprises of the two brothers. The testator and Frank Auditore each owned half the stock in these corporations, and, during the lifetime of the testator, they together conducted the corporate business. After Frank Auditore was appointed administrator with the will annexed of his brother's estate, he held all the stock of these corporations — one-half in his own right and one-half as administrator — and he controlled and managed the corporations. In his management of the affairs of the corporations, after the death of his brother, Frank Auditore misappropriated the funds of the corporation. In 1923 Mrs. Parascandola, as administratrix with the will annexed of the estate of her husband, brought a stockholder's action in behalf of the corporations against Frank Auditore, individually and as her co-administrator, to recover *for the corporations* the amount which Frank Auditore had taken from the corporations. The appellants were retained by Mrs. Parascandola to bring that action and, thereafter, to avoid the appointment of a receiver in that action, the parties agreed that the appellants should become officers and directors of the corporations. Since November, 1923, the appellants have controlled and managed the affairs of the corporations.

For the services rendered to the corporations the appellants should receive reasonable compensation from the corporations. Benefit to the corporations would, of course, indirectly benefit the testator's estate. Indeed, the stock of the corporations was the only asset of substantial value in the estate, and the estate would, upon the liquidation of each corporation, be entitled to half the surplus remaining after the creditors of each of the corporations were paid. When the appellants were placed in control of the corporations, a duty towards the corporations arose to exercise that control faithfully and for the benefit of the corporations. They were, however, placed in control of the corporations only because they had been retained by the estate for the protection of the interests of the estate. In the exercise of that control they owed a duty to the estate as well as to the corporations. Thus, the duty of the appellants to the corporations and the services which they rendered to the corporations arose out of and are inextricably tied up with their duty to the testator's estate and their services to the estate. Nevertheless, even if it were possible to disregard the corporate form of the business in which the testator and his brother Frank were jointly interested, it would still be true that the estate could profit only indirectly from services rendered in the conduct of the joint business, through its right to a share in the surplus remaining after the business was liquidated, and that compensation for services rendered to the business must be deducted before that surplus can be fixed.

The stockholder's action brought by the appellants resulted in a large judgment against Frank Auditore in favor of the corporations. A judgment for a sum of money is only a trophy of an empty victory unless it is collected and it was impossible to collect the judgment from Frank Auditore, for he was insolvent. Until that point, the appellants had sought recovery from Frank Auditore only for damages caused to the corporations by

breach of duty which Frank Auditore owed to the corporations which he controlled. Indirectly that breach of duty to the corporations had, of course, damaged the estate of which Frank Auditore was administrator, and which owned half the stock of the corporations, and constituted a wrong to the estate. The appellants, thwarted in their attempts to collect damages for wrong to the corporations, successfully asserted the claim that Frank Auditore as administrator *and the surety* on his bond were responsible for the loss caused to the *estate* by his misappropriation of the funds of corporations in which the estate was a stockholder. The surety was compelled to pay to the estate the amount of that loss. (*Matter of Auditore*, 249 N. Y. 335.) The estate was made whole. A fund of $250,000, after deducting therefrom the reasonable cost of collection, became available for distribution among the creditors and legatees of the testator. The corporations did not share in the recovery. The appellants, through whose skill and labor the estate was enriched, are entitled to compensation from the estate for services rendered exclusively for the benefit of the estate.

For services rendered in obtaining recovery of the loss caused by the wrongdoing of Frank Auditore and for other services rendered exclusively for the benefit of the estate, the appellants claim that they are entitled to receive much more than the $50,000 which by direction of the Surrogate was paid to them " on account " in December, 1931. In addition the appellants have withdrawn from the funds of the corporations in which the estate had a half-interest the sum of $130,305.29 as compensation for services rendered to the corporations from which the estate derived an indirect benefit. Thus, the appellants have received the total sum of $180,305.29 for services rendered directly to the estate, and for services rendered to the corporations, but primarily for the protection of the interests of the estate and which indirectly benefited the estate. The referee reported that the value

of the services rendered directly to the estate did not exceed the sum of $50,000, and that " the value of the services, for which the petitioners have withdrawn from the corporations the sum of $130,305.29 did not exceed the sum of $101,000. Stated in another way I think that payment of $151,000 to petitioners for all their services to the estate and to the corporations will adequately, fairly and, in fact, most liberally compensate them for all their services." Previously the referee had requested the Surrogate to rule upon the question of whether he had jurisdiction to pass upon the reasonable amount of the compensation for services rendered by the appellants to the *corporations* and to direct a refund if he should find that the total amount paid to, or retained by them for services rendered as attorneys, exceeds the sum to which they would be entitled upon principles of *quantum meruit*. Instructed by the Surrogate that he had such jurisdiction, the referee made the finding " that there has been an overpayment to the attorneys in the amount of $29,305.29 and that they should be directed to refund to the estate such excess sum."

We have pointed out that the estate owned only half the stock of the corporations and was entitled only to half of the profits of the corporations or, in case of liquidation of the business of the corporations, to one-half of the capital after payment of the creditors. The trustee in bankruptcy of Frank Auditore had the same interest as the administratrix of the estate. The administratrix and the trustee in bankruptcy could, through stock control, choose directors and officers who would manage the corporations. Neither had power, in official capacity, to manage the business of the corporations. It is, therefore, evident that the corporations and the estate were not identical, and the corporate form may not be disregarded as a mere cloak concealing the estate. Though, as we have pointed out, the appellants in the control of the corporations owed a duty to both the corporations and

the estate; though the services rendered to the corporations were connected with and arose out of their retainer by the administratrix; yet the corporations were the primary beneficiaries of the services rendered to them; the corporations were primarily liable for such services, and if there has been overpayment from the corporate funds, the corporations primarily are injured by such overpayments. A "refund" cannot be made to the estate of moneys which never belonged to the estate, and the moneys paid to or retained by the appellants for services to the corporations never belonged to the estate.

It is difficult under these circumstances to find any sound basis for the assumption by the Surrogate's Court of power to determine what would constitute a reasonable compensation for services rendered to the corporations and to direct the " refund " to the estate of any overpayment from funds of the corporations. The power of the Surrogate is defined by section 231-a of the Surrogate's Court Act. Under its provisions the Surrogate has power to fix and determine the compensation of an attorney " for services rendered to an estate or to its representative, or to a devisee, legatee, distributee or any person interested therein," and the Surrogate may direct " payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee   *   *   * therein." By chapter 332 of the Laws of 1934, while the proceedings now under review were pending, the Legislature added to the section a provision that " in the event that any such attorney has already received or been paid a sum in excess of the fair value of his services as thus determined, the surrogate shall have power to direct him to refund such excess." The corporations, which are primarily liable for compensation for services rendered to them and from whose moneys the alleged overpayment has been made are, as we have shown, not identical with the estate. They are not in any sense devisees, legatees, distributees or persons interested in the

estate. The funds, from which payment has been made for services rendered primarily to the corporations, have never belonged to the estate and have never been " in the hands of the representative " of the estate. The corporations are not parties to these proceedings; they are not bound by any adjudication of the Surrogate in these proceedings, and though the Surrogate has held that the appellants have overpaid themselves, the " refund " of such alleged overpayment, if made to the estate, cannot inure to the benefit of the creditors of the corporations whose funds have been used for such overpayment, or to the trustee in bankruptcy who has the same interest in the corporations and the funds of the corporations as the estate.

Various theories have been suggested by the surrogate and urged by the respondents to sustain the direction for a " refund " to the estate. None can successfully withstand analysis when applied to the undisputed facts in this case. For the reasons already stated, the corporate form does not serve merely to mask the fact that the estate owns and manages the business of the corporations. Here there is no identity in ownership or in control. What the court said and decided in *Matter of Auditore* is misconstrued if relied on as authority for a ruling that corporate form may here be disregarded and the assets and business of the corporations treated as the assets and business of the estate. In that case the court held only that an administrator of an estate who misappropriates the funds of a corporation in which the estate is a stockholder, commits a wrong to the corporation, and can be compelled to restore to the corporation the moneys taken, and at the same time commits a wrong to the estate, by diminishing the value of the stock owned by the estate, for which wrong the administrator must respond in damages. In the prevailing opinion by CRANE, J., the court pointed out that in reaching that conclusion we do not " have to ignore the corporation or the corporate form " (p. 342). On the contrary, the

rule of the case would apply even where the estate was a small minority stockholder in a great corporation.

Nor can a direction for a " refund " to the estate of moneys taken from the corporations be justified on any theory of estoppel. Even if the appellants had assumed to treat the assets of the corporations as though they belonged to the estate, the appellants could certainly not thereby confer upon the estate title to the corporate assets. Reasonably construed, section 231-a confers upon the Surrogate a power to direct an attorney who has received or been paid a sum in excess of the fair value of the services as determined by the Surrogate, " to refund such excess " only to the estate or person from whose moneys such excess had been paid. The direction here for a refund to the estate can be sustained only if it appears that the alleged overpayment was made from the moneys of the estate.

There is no evidence or finding that the appellants have been paid from moneys of the estate more than the reasonable value of services rendered to the estate and for which the estate is primarily responsible. The evidence, the report of the referee and the opinion of the Surrogate leave no possible room for doubt as to the source of the alleged overpayment. The appellants have taken from the corporations $130,305.29 in payment of services rendered to the corporations. The fair value of these services has been appraised at not over $101,000. The consequent overpayment of $29,305.29 has injured the corporations directly, and any claims the corporations or the corporate creditors may have to a refund of the excess cannot be taken away from them by an order, in a proceeding where the corporations are not represented, to make the refund to the estate which owned half the stock.

The appellants upon this appeal have challenged the decree of the Surrogate not only on the ground that the court exceeded its powers when it directed a refund of alleged overpayment by the corporations for services

rendered to the corporations, but also on the ground that the determination that the fair value of the services of the appellants rendered directly to the estate does not exceed the sum of $50,000 already paid to them is erroneous as matter of law. The appellants asked that they be allowed fifty per cent of the sum of $254,000 recovered by the estate through their work, and an additional amount for additional services. They claim that the finding of value of only $50,000 is not based upon an impartial consideration of competent evidence, but upon prejudice and legal error.

The Appellate Division has said in its opinion that, " in view of the work, skill and good faith of the appellants, and as there is no evidence of fraud, there should be no reflection on the integrity of their conduct." (253 App. Div. 816.) The fairness of the value placed by the courts upon the services rendered by the appellants must be weighed accordingly. A trier of the fact would have been well justified in valuing the services directly rendered to the estate at more than the sum of $50,000 which has already been paid to them. We cannot say, however, that, as matter of law, that sum is inadequate. Doubtless in fixing the compensation to be paid to the appellants, the courts below did not entirely disregard the large amount retained by them out of the moneys of the corporations for services rendered to the corporations. Many factors at times enter into the determination of what constitutes reasonable compensation for legal services. Though the corporations whose moneys were used to pay for services rendered directly to them may still in appropriate proceedings challenge the amount which the appellants have paid themselves, and though the value of the services for which the corporations are primarily liable cannot be fixed in the proceeding to which the corporations are not parties, yet the fact that the services rendered to the corporations and the right to obtain very substantial compensation from the corporations, arose out of the

retainer by the estate, need not be completely ignored in determining the amount which the estate should be called upon to pay. Assurance that the attorneys would receive adequate compensation for services arising out of the retainer by the estate might, at least, induce the attorneys to assume the risk that for services rendered the estate, the estate might not have sufficient assets to pay liberal, or even adequate, compensation. We find no reversible legal error in the decision fixing the value of the appellants' services for which the appellants have asked compensation at the sum of $50,000.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified by striking out the direction for a refund, and as so modified affirmed, with costs to all parties payable out of the estate. (See 278 N. Y. 624.)

O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., taking no part.

Ordered accordingly.