Maurice D. Isenbebgh, S.
Application has been made by the temporary administrator, Chemical Bank New York Trust Company, herein referred to as the Bank, for an order (1) authorizing it to sell certain shares of stock belonging to the estate, not affecting the decedent’s corporation hereinafter mentioned; and to pay certain debts, funeral and administration expenses out of estate assets; and (2) authorizing and approving a salary for David C. Anchin as president of Monroe Paper Box Co., Inc., J. J. Dix, Inc., and the McClintock Corporation, corporations in which the decedent was the sole stockholder, and as president of Port Morris Sales Co., Inc., about 70% owned by the decedent, and for out-of-pocket expenses in connection with the first-named corporation, such salaries and expenses to be paid by the corporations out of their respective corporate funds. Included within the debts which the petitioner seeks authority to pay, are charges made to each corporation for services of Anchin, Block & Anchin, a firm of accountants in which David C. Anchin is a partner.
Mr. Anchin is a legatee under and proponent of the paper writing now before the court for probate. It is being contested by Bose Selby, decedent’s sister. The decedent’s widow, Elynor Dix, initially joined in the petition for probate but later withdrew as a proponent. Her present position in the probate proceeding is that of a legatee and devisee named in the paper in question. Both the sister and the widow are opposing part of the present application of the temporary administrator. They have filed separate answers through their respective attorneys, setting forth multiple objections nearly identical in form and substance. They object to any payments being made either to David 0. Anchin or to his firm of Anchin, Block & Anohin. They object further to any payments being made to the firm of Kadel, Wilson & Potts, attorneys for Mr. Anchin in the probate proceeding, and attorneys for the Bank as temporary administrator, and to any payments being made to the California law firm of Chapman, Frazier, Bindley & Young, both claims being for legal services rendered to decedent, also to any payments being made to Joel E. Mitchell & Co. for accounting services rendered at the request of the temporary administrator in connection with its preliminary inquiry into the management of the four corporations.
*423 After the answers were interposed, the contestant served notice to take the testimony of the Bank through two designated officers as an adverse party before trial. The Bank in a separate motion brought on simultaneously herewith has moved to vacate the notice on the ground that the contestant is not entitled to such examination as a matter of law. The Bank contends that its application is made pursuant to sections 127, 128 and 129 of the Surrogate’s Court Act which make no provision for the trial of issues upon an application for authority to pay debts, funeral or administration expenses; that the validity of such debts and expenses is not required to be established on such application for leave to pay; that objections to any such payments should be reserved until an accounting by the temporary administrator. The contestant and the widow argue that there are issues to be determined on this application; that their objections must be interposed now; and the contestant further argues that she is entitled to the examination before trial.
A careful reading of the petition convinces me that the application is one made under sections 127, 128 and 129 of the Surrogate’s Court Act. The contestant and the widow may have been led to believe that the petitioner’s request for approval of the corporate salaries and expenses mentioned, required them to file their objections and have a trial of the issues at this time or be forever barred from doing so. It is my opinion, however, that the validity of these claims is not before the court on this application, and an examination of the pertinent statutes seems to lead to such a conclusion.
Under section 127 of the Surrogate’s Court Act, the Surrogate may authorize a temporary administrator to pay funeral and administration expenses, and, under section 128 of the Surrogate’s Court Act, upon proof to his satisfaction that the assets exceed the debts, he may permit a temporary administrator to pay the whole or any part of a debt due to a creditor of the decedent upon such terms and conditions as justice may require. These statutes neither expressly nor inferentially authorize or require any determination as to the validity of such claims before permitting payment by a temporary administrator; and the granting of such permission does not amount to a determination that the claims are valid. Upon receiving permission to pay claims, a temporary administrator becomes subject to the same accountability for their payment as though he were then an executor or an administrator in chief. I have found no authority and none has been cited by counsel permitting the filing of objections and the trial of issues on an interim application of this kind, as sought by the contestant and the widow. On the *424 contrary, there is precedent of long standing in support of the proposition that such objections and issues arising therefrom are properly reserved for the accounting’, (Stokes v. Dale, 1 Dem. 260; Mason v. Williams, 3 Dem. 285 reported sub nom. Matter of Hamersley, 15 Abb. N. C. 187.) A similar decision was made in Matter of Astor (18 Misc 2d 400). Accordingly, the court holds that no issues are triable upon this application; that the contestant is not now entitled to examine the temporary administrator as an adverse party before trial; and that the Bank’s motion to vacate the contestant’s notice of examination should be and is granted.
It is appropriate to state at this point that since the return day of this application, and by consent of the parties, an intermediate order was made and entered on November 28, 1961, which granted part of the Bank’s application by authorizing it to pay certain claims. It should be further noted that in arriving at a determination of the remaining portions of the application, the court has given consideration to the statements contained in the respective answers of the contestant and widow as though they had been submitted in the form of answering affidavits.
It is undisputed that the assets of the estate exceed the debts. The petition alleges such to be the fact, and on the oral argument the court was informed by counsel for the petitioner that the assets exceeded $600,000, an amount far greater than the debts. No one has disputed the statement, and the statutory condition in respect of an excess of assets over debts may be resolved as fulfilled. This probate proceeding has now been pending for upwards of three years and the appointment of a permanent estate representative does not appear to be iminent. For this reason and after due consideration the court has decided to permit the temporary administrator to pay $3,200 to Kadel, Wilson & Potts, attorneys, and $859.47 to Chapman, Frazier, Bindley & Young, attorneys, as creditors of the decedent, and $500 to Joel E. Mitchell & Co., accountants, as an administration expense. ■ Permission to pay these claims is granted subject to objections which may be made thereto by any party appearing herein on the accounting of the Bank as temporary administrator.
There remains for consideration that part of the application which seeks an order authorizing and approving salaries for Mr. Anchin as president of the four-named corporations, and his out-of-pocket expenses in connection with one of them; and authorizing payment to Anchin, Block & Anchin for accounting services charged to each of the corporations.
*425 The court is asked to approve salaries for Mr. Anchin at the annual rate of $20,000 as president of Monroe Paper Box Co., Inc., besides $100 per month for out-of-pocket expenses for telephone, postage, stationery, traveling and entertainment in connection with his duties as such president; and at the annual rate of $10,400 as president of Port Morris Sales Co., Inc., and at $500 per annum as president of J. J. Dix, Inc., and at $250 per annum as president of the McClintock Corporation.
It is not clear from the petition as to just what period of time is involved in the requested salary approval, nor does it show the aggregate amount of such salaries. It is sufficient to state here that apparently the time period runs from the date of decedent’s death, August 30, 1958, to the time of making this application. The related amount of money approximates $97,000. The payments requested to be authorized to Mr. Anchin’s accounting firm are $9,534.10 from Monroe Paper Box Co., Inc.; $7,799.17 from Port Morris Sales Co., Inc.; $12,127 from J. J. Dix, Inc., and $4,683.97 from the McClintock Corporation, a total of $34,144.24.
The Bank has emphasized in a memorandum submitted on its behalf, that as to such salaries and expenses for Mr. Anchin, it does not ask for authority to pay the same as it does with respect to estate debts and funeral and administration expenses, but rather for an order authorizing and approving the salaries and expenses. It declares that it does not pay such salaries, though on its accounting it may be held responsible for loss to the estate through improper corporate payments it could have prevented as a majority stockholder. It states further that salaries must be paid by the corporations themselves and makes it clear that the wages and salaries of all other employees of the corporations have actually been paid by the corporations.
The position of Mr. Anchin, advocated through independent counsel by whom he appeared on the return of this application, is that the province of fixing and paying corporate salaries is a matter of corporate concern over which this court may not exercise any visitorial power; and he argues alternatively, that the court should authorize payment of compensation to him and to his firm, subject to objection on accounting. These contentions of Mr. Anchin and the Bank recognize that the corporate entities may not be disregarded (Brock v. Poor, 216 N. Y. 387; Matter of Auditore, 278 N. Y. 234); that the management of the corporations may not be taken out of the hands of the directors (Manson v. Curtis, 223 N. Y. 313; Matter of Kohler, 231 N. Y. 353); that the affairs of the corporations may not be administered as if they were a part of the estate (Matter of *426 Browning, 258 App. Div. 621, appeal dismissed 282 N. Y. 804); that compensation for the services here under discussion can be determined only by the corporations themselves (Matter of Auditore, supra); that a fiduciary may not exercise plenary managerial control over the corporate affairs, and the court is without power to direct him so to do (Matter of Shupack, 1 A D 2d 841, mod. 1 N Y 2d 482); and that such rulings apply even though the corporations are wholly owned or controlled by the fiduciary. The contentions of Mr. Anchin and the Bank further recognize that the temporary administrator may be called to account as well for the transactions of the corporations, as for its acts otherwise affecting the estate. (Matter of Hubbell, 302 N. Y. 246.)
The foregoing and numerous other cases cited by counsel in a most excellent and helpful memoranda treat with permanent fiduciaries. They are distinguishable from the situation at hand which concerns a temporary administrator. The court has found no case in point concerning temporary administrators and none has been cited by counsel.
Section 127 of the Surrogate’s Court Act grants a temporary administrator authority to take personal property into his possession “ to secure and preserve it ”. The duty to preserve implies the power to take the steps necessary to perform the duty. The Bank, upon its appointment as temporary administrator on July 27, 1959, came under the duty of preserving the decedent’s interest in these four corporations. That duty has required the Bank to manage and operate the corporations through its stockholder control. That such was the nature of its responsibilities in respect of these corporations appears to have been so understood by the Bank. Confirmation of the Bank’s understanding of its responsibilities and its authority is demonstrated by the following part of paragraph 7, page 3 of its petition: “ Subsequent to petitioner’s appointment as Temporary Administrator as aforesaid, and after independent inquiry into the capabilities of said David C. Anchin to effectively perform the duties of President of said corporations, and in the light of his demonstrated experience as reflected during the eleven months intervening between the dates of decedent’s death and petitioner’s appointment as aforesaid, petitioner continued said David C. Anchin in said capacity of President.” It did not seek advice or direction of the court upon the matter of the election of directors or the election of Mr. Anchin as president or the identity of its other officers and agents. Concededly, the corporations have paid the wages and salaries of all corporate employees other than Mr. Anchin. It appears further, *427 from certain operating statements filed by petitioner on this application, that extensive corporate payments have been made for raw materials, labor costs, and sundry overhead expenses without seeking the direction of the court. These observations are noted for the purpose of demonstrating that heretofore the Bank has evidenced no doubt as to its obligation and power to operate these corporations without interim approval of the court.
The decision of this court, in appointing the Bank as temporary administrator, should have dispelled all doubt on the subject, wherein it stated: “ I do not believe it would be proper for me upon making the appointment of this bank or any other bank to surround the appointee with restrictions telling it what it cannot do as suggested by the contestant. An administrator’s duties are to conserve the assets of the estate and to act in a manner at all times for its benefit. The administrator will have power to represent the estate and protect its interests in these corporations. It should perform its duties without partiality and in the best interest of the estate. For improper stewardship it is accountable and liable. In seeking advice and direction on legal matters it ought to have the right to choose its own counsel. No other rule should prevail. I make no attempt to tell the administrator whom it should employ as counsel or what changes it should make in the corporations. After taking possession of the assets the administrator will represent a controlling interest in all four corporations and if it should decide it is not practical or for the best interest of the estate for it to employ Mr. Potts’ law firm as its counsel or to retain Mr. Anohin in his present positions, then it should act accordingly. The interests of all the parties concerned should be its interest and its dealings should be fair and aboveboard.” (Matter of Dix, 21 Misc 2d 864, 869, affd., 11 A D 2d 555, motion for leave to appeal denied 11 A D 2d 966, appeal dismissed 9 N Y 2d 712.)
The court fails to note the distinction between paying a president and paying other officers and employees, or between charges for accounting services and other services, which the Bank has endeavored to make here. All are matters of corporate management, calling for the exercise of business judgment and not for the determination of questions of law. (Matter of Connor, 153 N. Y. S. 2d 185.) The Bank already has the obligation as well as the power and authority to make certain that the salaries and expenses, and the accounting charges, brought into question by this application, are determined by each affected corporation and that the interests of the decedent’s estate therein are properly protected. These views are not altered by the enact *428 ment of chapter 109 of the Laws of 1961, effective September 1, 1961, which amended section 127 of the Surrogate’s Court Act by adding thereto the following matter: 1 ‘ The surrogate may, by order upon such notice as he shall direct, authorize the temporary administrator to continue, either personally or by an agent approved by the surrogate, the operation of any business conducted by the decedent or absentee, either pending a sale for which authorization under the preceding sentence has been granted or applied for, or without regard to the pendency of such sale, for such period and under such conditions as the surrogate shall fix, where the surrogate shall find that such continued operation is in the best interests of the estate.” It is urged on hehalf of the decedent’s widow that the quoted amendment, wherein it refers to “ the operation of any business conducted by the decedent or absentee ”, applies to a business conducted by a corporation which is wholly owned by the decedent or absentee. It is then implied that, prior to the amendment, a temporary administrator had no power or authority to continue the business of such a wholly-owned corporation through the exercise of stockholder control. It is further but less strenuously contended that the amendment also applies to Port Morris Sales Co., Inc., in which the decedent had a 70% interest.
It is my opinion that the amendment is not applicable here. The language of the cited amendment is unambiguous. Its words and meaning seem clear. The provision refers to a business conducted by the decedent or absentee, and has no reference to any business conducted by a corporation, whether such corporation be wholly or partly owned by the decedent or absentee. The sense of the amendment is to empower the court to authorize a temporary administrator to continue the operation of any business which was conducted by the decedent or absentee in individual form. “ The idea of the Legislature is not in doubt and its meaning and effect cannot be extended by conjecture or implication. ’ ’ (Town of Putnam Valley v. Slutzky, 283 N. Y. 334, 343.) If the Legislature had intended the “ business conducted by the decedent or absentee ” to include the business of a corporation wholly owned by the decedent ■ or absentee, it could have easily and readily so provided. (Meltzer v. Koenigsberg, 302 N. Y. 523.)
For the reasons herein stated the court, therefore, denies the Bank’s motion for an order authorizing and approving salaries and expenses for Mr. Anchin, and authorizing payment of bills rendered by his accounting firm, as described in the petition herein.