In the Matter of the Estate of ELIZA W. VALENTINE, Deceased.

Surrogate's Court, New York County, December 29, 1937.

*Root, Clark, Buckner & Ballantine* [*John Harlan* of counsel], for Henrietta Porter Lippincott, legatee.

*Harold E. Lippincott,* for Henrietta Porter Lippincott, as executrix, etc.

*Cadwalader, Wickersham & Taft,* for the Home for Old Men and Aged Couples.

*John J. Cray,* special guardian for Elizabeth Jarvis Beach, infant.

*Rogers H. Bacon,* for the St. Luke's Hospital, legatee.

*De Forest, Cullom & Elder,* for the Presbyterian Hospital, legatee.

*John Godfrey Saxe,* for the Trustees of Columbia University.

*Breed, Abbott & Morgan,* for St. Thomas' Church, legatee, and for the trustees of Amherst College.

*White & Case,* for the Bankers Trust Company, as trustee.

*Kenneth C. Quencer,* for the respondent Union for Home Work.

*McKercher & Link,* for the Fifth Avenue Hospital, legatee.

*Budd & Coffey,* for the trustees of Trinity College, respondent.

*Origen S. Seymoure,* for the New York School for Deaconesses.

FOLEY, S.   Two separate proceedings were originally brought on, one for the construction of the will and the other for the voluntary accounting of the executrix.   The proceedings were consolidated by proper order.   The petition for construction prays for a determination as to the meaning and effect of the second and twenty-seventh paragraphs of the will and the disposition of the property intended to be made thereunder by the testatrix.   The petitioner is a sister of the testatrix and her sole next of kin and distributee. She is also the sole executrix and a cotrustee under the will.   Three questions are involved.

(1) Under paragraph second of the will the testatrix bequeathed to her sister " the sum of Five hundred thousand Dollars, and if, at the time of my decease, I shall not have that amount of cash to my credit, then I give to her securities which I may own at the time of my decease, to be selected and accepted by her at their then market value, to make up said sum of Five hundred thousand Dollars.   It is, however, my wish that in making this selection of securities, my sister shall include all such shares of stock in various

Hartford, Connecticut, corporations, as I may own at the time of my decease and which I inherited from my father."

Mrs. Valentine had standing to her credit in banks at her death cash in the sum of $139,503.64. It is contended on behalf of the petitioner that since the cash left by the testatrix was insufficient to pay the $500,000 in full she was entitled to take all the shares of stock of the Hartford corporations regardless of their value. These securities were worth approximately $730,000 at the date of death and about $900,000 on April 10, 1934, when she turned them over to herself upon the pretended ground that she was entitled to them under the will. Her contention is based on the theory that there were two alternative bequests, (a) a cash bequest of $500,000 if at the time of the decease of the testatrix there was that amount of cash to her credit, and, if that contingency did not exist, (b) an alternative bequest solely of securities, not limited in value to the specified sum, including all the stocks of the various Hartford corporations referred to. The contention of the petitioner is entirely without support in the language of the will or the observable intent of the testatrix. The language of the gift has been clearly expressed by the testatrix, and her intention is readily ascertainable. The legatee was entitled to securities sufficient "to make up the sum of Five hundred thousand Dollars." The provisions of paragraph second dealing with the controversial matter involved may be divided into three parts: *First*, the bequest of cash in the sum named; *second*, the gift of securities and the method and medium of payment of that sum and no more, applicable in the event of the insufficiency of the amount of cash, and *third*, the expression of a wish as to the selection of the Hartford securities. The amount of the bequest, however, was neither increased nor diminished by the contiguous sentence relating to the Hartford investments. The fixed pecuniary amount limited the total of every form and source of its payment. If there was insufficient cash to pay the legacy in full the petitioner was to receive, in addition to the available cash, securities of sufficient value to make up the cash deficit. If there was no cash to the credit of the testatrix at her death the petitioner became entitled to securities of the value of $500,000. The testatrix wrote, " it is, however, my wish " that, in making the selection of securities, her sister should include all stock of the Hartford corporations which had come to her from her father. The very form of the expression is controlling since the suggestion was merely precatory and not mandatory. The petitioner had the right to select whatever shares of stock she chose so long as she confined herself in the selection to the pecuniary maximum. She was not limited to the

Hartford corporations stock, but might select any other securities in the estate. She was not, therefore, entitled to take the amount of cash and the aggregate of the Hartford securities. By her arbitrary withdrawal of the latter shares and all the cash she has obtained an excess of at least $370,000 above what she was given under the will.

(2) I hold further that the value of the securities selected and accepted by the petitioner must be determined as of the date of the testatrix's death, on January 4, 1934, and not the date of reception by her. The testatrix has herself, in clear and unmistakable language, definitely fixed the date of death as the time of appraisal. The language used permits of no other conclusion. At the very beginning of the sentence she provided that the amount of cash applicable to the legacy was to be determined as of her death. She then provided in the same sentence for the gift of the securities which she might own " at the time of my decease." That date was again made the test of the specific assets which were to be added to the cash. The word " then " must be held to refer to these true antecedents and not to the date of selection of the securities. She used the phrase " at the time of my death " twice in the sentence, and repeated it in the next sentence of the paragraph. " Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant." (*Matter of Buechner*, 226 N. Y. 440.) In the ordinary case, where securities are distributed in kind, the date of distribution governs, and their value is determined as of the date of delivery. Here, however, a different time has been plainly indicated by the testatrix, and such date must control. I accordingly hold that the petitioner is entitled to the cash left by the decedent at the date of her death, which amounted to $139,503.64, together with sufficient securities selected by her at their fair market value as of the date of the death of the testatrix to make up the deficiency, amounting to $360,496.36.

(3) The remaining question raised by the petitioner involving the construction of paragraph twenty-seventh of the will requires little discussion.

Under paragraph twenty-sixth the testatrix devised and bequeathed her residuary estate to her sister and the Bankers Trust Company, in trust, to pay the income thereof to the petitioner during her lifetime. She then provided in paragraph twenty-seventh as follows: " Upon the death of my said Sister Henrietta Porter Lippincott, I give and bequeath out of the residue of my estate directed to be held in trust for my said sister by the Twenty sixth clause of this my Will, with such additions as may be made

thereto, in the event of the death of my said sister before me, or in the event of the death of my said sister and myself as the result of a common calamity, as follows."

Then follow gifts in certain fixed amounts and proportions to charitable institutions.

The petitioner asserts that paragraph twenty-seventh did not operate to dispose of the remainder of the trust created under paragraph twenty-sixth, in the contingency that she survived the testatrix, and since that contingency has arisen here intestacy has resulted. She contends that, because of the sentence structure of that paragraph and its punctuation, the testatrix intended the remainder only to become effective if the petitioner predeceased the testatrix or died with her in a common calamity. That contention is without any logical foundation in view of the clearly expressed indications of intent by the testatrix to make a full and complete disposition of all her property. The will has been drawn with meticulous care. The testatrix and the draftsman had a well-designed testamentary plan in mind. After making certain general and specific bequests to her sister and others, she gave her entire residuary estate, in trust, with income payable to her sister during her lifetime. The plan of the will then follows the normal and natural custom adopted in such situations, an outright disposition of the remainder after the death of the life beneficiary, which became effective. There are provisions for the contingency of death of the life beneficiary before the testatrix or as a result of a common accident, which never became effective. The grammatical structure of the paragraph, when read with the other provisions of the will and the clearly discernible plan of distribution, is consistent with only one construction, that the testatrix intended the remainder to pass to the charities specifically named under any one of these three alternative contingencies. The testatrix has expressed her thoughts with perspicuity and correctness, and it requires no rearrangement of clauses, deletion of commas, or other changes in the paragraph to more accurately or clearly express her intent. To sustain the construction proposed by the petitioner would not only violate the declared purpose of the testatrix but would bring about an intestacy against which a presumption always must be held to exist. (*Matter of Hayes*, 263 N. Y. 219, 225.) Further emphasis for this conclusion is found in the use of the words " surviving trustee " in subdivision 5th of paragraph twenty-seventh of the will, which are entirely inconsistent with the construction proposed by the petitioner. The testatrix had appointed her sister and a trust company as cotrustees of this trust. There would be no need for direction to the " surviving

trustee " to divide the remainder among the charities if the gift of the remainder was not intended to take effect. The testatrix was well aware of the distinction between the duties of a trustee and those of an executor, for in the next to the last paragraph of her will she appointed the Bankers Trust Company as sole executor in the contingency of the death of her sister before her or in the case of her death and her own death in a common calamity.

Reliance is placed upon *Matter of Winburn* (265 N. Y. 366). That case presented an extremely strict construction of the terms of the will as written. When so construed it was entirely possible to infer that certain contingencies had been overlooked. Intestacy was, therefore, decreed as to the part of the estate affected by the failure to express a disposition. The will under construction here is entirely different in its comprehensiveness. Every possible contingency was anticipated by the testatrix. The testamentary distribution is complete.

In view of my determination herein, the over-withdrawals of securities by the petitioner must be corrected in the accounting proceeding because of the construction of the will adopted by the court. It is unnecessary at this time to determine the method by which restitution will be enforced or which specific securities will be required to be returned by her. All but one of the charitable residuary remaindermen have stipulated between themselves and with the executrix upon the values of the securities as of the date of the death of the testatrix. Undoubtedly, as between this group, it will be possible to agree upon the specific securities that must be turned back by the petitioner into the trust. If not, a proper determination can be made by the referee to be appointed herein. Similarly as to the charitable remainderman who has not joined in the stipulation, in view of the complications of valuation and appraisal, the referee may take appropriate evidence upon that issue and determine such valuations.

Submit intermediate decree on notice construing the will accordingly.

Order of reference to hear and determine the remaining issues raised by the objections, signed.