S. Samuel Di Falco, S.
The account of the executors is the subject of objections by one of the contingent remaindermen of the residuary trust. The testator was survived by his widow and by several nephews and nieces. He gave to his widow an outright legacy equal to the marital deduction allowed in the estate tax proceeding, and set up the residue of his estate in trust for her life use, with remainder to named nieces and a nephew or their issue or the survivors of them. One of the objections raises an issue respecting the so-called marital deduction legacy, and it requires a construction of that portion of the will. Briefly stated, the question is whether assets distributed to the widow in satisfaction of that legacy are to be valued as of the date of the testator’s death (which is the date ¡as of which the assets were valued for estate tax purposes) or as of the date of actual distribution.
The pertinent portion of the will is article sixth, which reads as follows: “ If my beloved wife, dolly etckelsbukg, survives *84 rue,, I.give and bequeath to her such portion of my estate which sháil'pquál the amount of the maximum marital deduction allow-, áble'in determining the Federal estate tax on my estate,' dimin-. ished.-by the value' of any interest in any and all other assets or- items' of .property, real or personal, which qualify-for'said1 marital deduction and which pass or have passed to my said wife under, other provisions of this Will or outside this Will, to the extent that such interest shall be included in valuing my gross estate for Federal estate tax purposes. My executors shall have full -authority and discretion to satisfy said bequest wholly or partly iir cash or in kind, and to select and designate and to convey and assign to my said wife the cash, securities or other assets, including real estate and interests therein, which shall constitute, said bequest; provided, however, that in no event shall5 there' be included in said bequest any asset or proceeds of any assef:with respect to which a marital deduction would not be .'allowable if so included. In computing the value of said portion of my estate, the final determination of valuations of assets in the Federal estate tax proceeding shall control. ’ ’
The executors have selected and distributed to the widow, in partial payment of her legacy, shares of stock of Fur Merchants Warehouse Corporation, which was the principal asset of the estate. The executors, in making distribution to her used the value of the stock as fixed in the Federal estate tax proceeding. The objectant complains that the stock should have been valued as- of the date of distribution.
It is the general rule that in fixing the - value of assets for distribution in kind, the values are determined as of the time of distribution (Matter of Valentine, 165 Misc. 863, 866), unless the will prescribes a different time for fixing values or a different procedure for valuation. The question is whether the will of this testator fixes a different method of valuation. The first sentence of article sixth establishes the marital deduction formula: The widow is to receive “ such portion of my estate which shall equal the amount of the maximum marital deduction allowable in determining the Federal estate tax on my estate ”. It is’ to be noted that the will does not give her a sum of money equal to the amount allowed as a deduction, but rather gives her “ a portion ” of the estate. The testator then gives the executors “ full authority and discretion to satisfy said bequest wholly or partly in cash or in kind, and to select and designate and to convey and assign to my said wife the cash, securities or other assets ”. Up to this point perhaps there might be some room for differing interpretations of the authority of the executors with respect to the váluation of assets distributed to the widow. *85 However, the testator has added one final sentence that leaves no doubt at all with respect to his intent. He' directs that in “ computing the value of said portion of-my estate, the- final determination of valuations of assets in the Federal estate' tax proceeding shall control.”
The objectant contends that what this concluding sentence of article sixth means is merely that the cash value of the legacy is to be fixed in a specific amount on the basis of the valuation of assets as made in the tax proceeding. He refers to the opening words of that sentence, viz.,‘ ‘ In computing the value of said portion of my estate ”, and argues that this “ clause merely fixes the amount of the marital bequest as a specific dollar legacy.” But according to his argument, the very first sentence of article sixth does the very same thing. The first sentence clearly says that the widow’s portion of the estate is to equal the amount of the maximum marital deduction that would be allowable in the Federal estate tax proceeding. The value of that legacy cannot be definitively fixed until that tax proceeding is concluded, but when so concluded, its value is so firmly fixed as to preclude all argument and is so readily ascertainable that a mere glance at the total figures is sufficient. It is true that the parties may still argue over the meaning of the word “ portion ”, that is, whether it signifies a general pecuniary legacy or a fractional share of the estate. But whichever meaning is attributed to it, it must nonetheless be admitted that the first sentence of article sixth very clearly furnishes the measure of the pecuniary value of the widow’s legacy.
The testator then passes from definition of the legacy to the matter of its payment and satisfaction. The testator must have realized that to satisfy this and other legacies, there must either be a distribution of shares of Fur Merchants Warehouse Corporation or a conversion of such shares into cash. His will expressly prohibits the sale of those shares without his wife’s consent. Distribution in kind to the widow was, therefore, fairly to be anticipated. The testator made express provision for it in his will. The final sentence, following immediately the direction for distribution in kind, would logically be expected to deal with the satisfaction of the legacy. It is true that the opening words of that sentence, standing alone and by themselves, might refer to definition of the gift .as.well as to its satisfaction. If they are given the former meaning,..they add;nothing to what has been said, represent merely an afterthought, are out of logical order, and express ambiguously what is clearly expressed in the first sentence. However, these words do not stand alone. They take color from the words which follow. The testator says *86 that the determination of the “ valuations of assets ” in the tax proceeding. “ shall control.”. Shall control what? Not the initial .dollar value of the legacy because that is fixed by the maximum allowable marital deduction and not by the valuation of individual assets. Obviously what the testator meant is that in making distribution in kind to his wife, the assets so distributed were to be valued as they were in the tax proceeding. In other words, the determination of value of assets in the tax proceeding is to control the distribution of .those assets in satisfaction of the widow’s legacy.
It seems to the court ..that this text, following as it does the grant of authority to make distribution in kind, would have no significance at all and no sensible place in the plan of the will unless it means precisely what it says, namely, that in computing the value of the assets distributed in kind to the widow in satisfaction of this will, the values fixed in the Federal estate tax proceeding shall be used.
' Such a testamentary direction is not at all unusual. Similar provisions in wills have heretofore been judicially construed. In Matter of Inman (22 Misc 2d 573, 577) Mr. Surrogate Cox had before him the same question that is at issue in the present proceeding. There the will also authorized distribution in kind and provided that “ any property so conveyed and assigned in kind to satisfy said bequest shall be valued for that purpose at the value thereof as finally determined for Federal Estate Tax purposes.” The Surrogate said (p. 577): “ Similar language has been construed as expressive of an intention that the legacy share in appreciation of securities and suffer the consequences of depreciation and also as a clear authorization to executors to take the action which is here criticised. (Matter of Bush, 2 A D 2d 526, affd. 3 N Y 2d 908; Matter of Jephson, N. Y. L. J., Nov. 13, 1956, p. 8, col. 5; Matter of Valentine, 165 Misc. 863.) The claim that this testamentary direction is violative of section 125 of the Decedent Estate Law is without merit (Matter of Bush, supra) and it is held that, in making distribution at tax valuations, the executors complied with the plain command of the will.”
The cases cited by the Surrogate fully sustain the decision there made and require a similar determination in this case. The court, therefore, holds that the executors had the authority to make distribution in kind to the widow and that they were required to usé the valuations fixed in the Federal estate tax proceeding. This interpretation of the will makes it unnecessary to decide whether the word “ portion ” was intended to *87 give the widow a proportionate share of the whole estate so as to entitle her to share in capital gains.
Several of the objections to the account relate to the operation of Fur Merchants Warehouse Corporation or to the disposition of its stock. Its shares are valued in the account at $1,434,342, the gross value of the entire estate being $1,858,-324.99. It is, therefore, the most substantial asset of the estate. It will be referred to hereinafter as “ the corporation.” At the time of the testator’s death, he owned 2,775 shares of stock of the corporation, his wife owned 800 shares and a third stockholder held the remaining 200 shares. The directors of the corporation were five in number. The testator had been a director and its president. The three individual executors (the widow, the testator’s attorney, and his accountant, now deceased) had been directors of the corporation, and continued as directors after they qualified as executors. The corporate fiduciary is represented on the board of directors by one of its officers. One of the executor directors died on May 3, 1958. The widow is now the president and treasurer of the corporation.
The corporation owns a group of conjoined buildings on West 28th Street which are used as a cold-storage warehouse for furs. The premises are occupied by a tenant under a lease made during the lifetime of the testator. In addition to this substantial asset, the corporation, either alone or through a wholly owned subsidiary, owns a substantial amount of securities which are listed on the national stock exchanges. At the time of the death of the testator the corporation also owned stock in two other business enterprises, Lillian Charm, Inc., and Myron Herbert, Inc.
On March 7, 1958, in order to provide the estate with funds for the payment of expenses, the executors delivered to the corporation 750 shares of stock for redemption in accordance with section 303 of the Internal Revenue Code of 1954 (U. S. Code, tit. 26, § 303). These shares were redeemed at a price stated to represent their market value in accordance with a consolidated balance sheet of the corporation and its wholly owned subsidiary, F. M. Operating Corp. All of the listed securities owned by the corporations were valued at the prices quoted on the stock exchanges as of the close of business on March 6, 1958. The real estate was given the value shown in an appraisal made for estate tax purposes as of the date of the testator’s death (Feb. 14, 1957), but the redemption agreement provided that if the value of the property were increased in the Federal estate tax proceeding, the corporation would pay *88 , to the estate -a sum sufficient to reflect that, increase. The. real estate valuation was increased by the Federal taxing 'authorities and the estate received .the increased value -,of the ,750 .shares. The ..valuation of these shares for .-the purpose-of redemption is the,subject of objections. , -. ■
• C>n March 7,1958 (the .date of redemption-of. the750 shares,;), the .executors transferred to the widow, in partial payment i of her -legacy,. 1,000 shares - of. stock of the, corporation. ;’These shares, as stated above,, were valued for distribution in accordance .with the determinations made.in the. estate' tax proceeding. The distribution and the redemption of 750 shares reduced the .estate.shares to 1*025 shares (out of 3,025) and increased-.the widow’s holdings to-,1,800. shares... The-act of the-executors-in losing , control of.-the-eorporation. is also-the -subject of objections.., Subsequent to,,the testator’s death',- the third stockholder initiated an action to compel the distribution to her of corporate surplus alleged.to have -been- accumulated. -That suit was settled in 1960 by the redemption of her 200 shares of stock by the corporation. The - third stockholder is, therefore, no longer concerned with the activities of the- direetors. - . The following rulings are made upon -the. objections- filed by the, remainderman: ■
Subdivision" (a) of the first objection has been withdrawn. Subdivision (b.) is to the market value set forth in the account for the shares of stock of Fur Merchants Warehouse Corporation as of the date of the decedent’s death. Tt is conceded that the-valuation set forth in the account is that-fixed in. the Federal estate tax proceeding.- It. is said dh'af, substantially-the .same valuation was fixed in the New York State estate tax proceeding. The executors quite properly-carry the, stock: in tlxerr. account at .the values fixed in the restate tax proceedings, and the objection is overruled. (Matter of Hoff, 186 Misc. 684, 686, affd. 270 App. Div. 891, affd. 296 N. Y. 650.)
The second objection relates' to the redemption of' the 750 shares of stock on March 7, 1958. • Objectant contends that (a) the r-edemption-.of the stock was improper, unauthorized, unwarranted, unnecessary and imprudent, and (b) the consideration received on the redemption of. the shares did not reflect their true-value at that time. ■ Subdivision (a) .of the objection is overruled. The will explicitly conferred discretion upon the executors to “utilize” shares of stock of the corporation to obtain benefits under section 115 (subd. [g], par.:[3]) of the Internal Revenue Code [of 1939] “ or any similar provision of law.” - The executors redeemed the stock -to obtain the benefit *89 of Section 303 of the 1954 code which contains' provisions similar to the section, of.the 1939 code referred to-in the will. The will thus explicitly authorized the action taken by the executors. In the exercise of their business judgment the action was necessary. Subdivision (a) of the objection is accordingly overruled.
That part of subdivision (b) which relates to the valuation of the stock of Lillian Charm, Inc., has been withdrawn. The valuation of the shares in other respects is claimed by the objectant to be erroneous for two reasons: first, in valuing the marketable securities owned by the corporation, the executors used the closing price of the securities on the Stock Exchange, rather than the mean between the bid and asked price on the date fixed for redemption; second, the real estate owned'by the corporation was valued in the sum fixed in the Federal estate tax proceeding-($442,500) when, in objectant’s opinion, the property was worth more - than one - 'million dollars. In valuing the stock holding, the executors were not negligent or imprudent. The method that they used was not unreasonable or improper. Their purpose was to be fair to both estate and the corporation and they used an objective standard that fairly represented- the value of the securities. Insofar as the value of the real estate is concerned, they used a valuation that had recently been determined by the Federal authorities. The objectant does not contend that circumstances had changed since the' dale of the-testator’s death--with'a resulting increase in-value of the property, but rather that" its value was higher than that- assigned to it by the estate’s expert-and higher also-than the increased-value platied upon it by the taxing authorities. The court has listened to-both experts and is of the opinion that the value fixed in both estate tax proceedings more nearly reflects the true value- of the property. The value was fixed- in- the tax proceeding - after the redemption- had' been initiated. Under such circumstances, the executors (who were also acting for the corporation as directors) could hardly have chosen a different figure without casting grave doubt upon their good faith in the-tax proceeding. The testimony of the experts indicates the difference of opinion that can exist on valuation between honorable and qualified men engaged in that field. The offer for the property made by an independent realty firm can be fairly considered on the question of value. The settlement of the lawsuit with the third stockholder also casts some light upon the' value -of-'-the real estate, having in mind the additional value- her shares- possessed' through the lawsuit. Under all of the circumstances, the court-believes- that the executors were justified in using the value of *90 the real property as fixed in the tax proceedings as a basis for valuing the shares of stock. Subdivision (b) of the second objection-is accordingly overruled.
The third objection has been withdrawn.-
The fourth objection is to payment of fees and disbursements in the total sum of $41,023.08 to the firm of attorneys of which one of the executors is a member. Payment of fees to an attorney executor prior to approval by the Surrogate is improper. However, the person entitled to all of the income earned by the estate assets has consented to such payment and no surcharge can be made in favor of the income beneficiary. The court fixes the reasonable value of the services of the attorneys, exclusive of those rendered in the contest herein, in the sum of $40,000. Their disbursements have not been itemized. The attorneys are directed to submit an affidavit itemizing such disbursements, and the court will pass upon them on the settlement of the decree. Objection is also made to the payment on account of executors’ principal commissions to the widow and to the now deceased executor. Although commissions are not payable to executors prior to the allowance by the Surrogate, the income beneficiary has consented to the payment on account (one of the payments being to herself) and no surcharge can be made for the advance payment.
The fifth objection has been withdrawn.
Subdivision (b) of the sixth objection has been withdrawn. Subdivision (a) is directed to distributions of stock to the David Nickelsburg Foundation, Inc. The executors transferred to the charity 60 shares of stock on March 7, 1958 at $518.05 a share and 13 shares on August 31,1959 at $680.26 a share. The price paid on March 7 was exactly the same as the price which the corporation paid on the same day for the 750 shares which were redeemed. The foundation takes its legacy under article fifth of the will wherein the testator gave $50,000 to such charitable organization or organizations as his wife might designate, expressing the hope that arrangements could be made for the establishment and maintenance of a charitable project that would bear his name. The twelfth article of the will authorizes the executors “ to make distribution of the assets of the estate * * * in kind or in cash, or partly in each, in their discretion.”
In their argument, counsel have treated as a unit this objection to valuation of 73 shares and the objection to the valuation of the 750 shares, giving no separate attention to value as of August 31, 1959. The objectant contends that the 750 shares and the 60 shares should have been valued at the same unit *91 price but at the higher price urged by him. With respect to the 13 shares, he argues only that their value ‘ ‘ should also be adjusted with respect to the true value of the real estate at the date of distribution.” He does not say that the value then, was any different than it-was in March, 1958. The executors’ expert said that the value was the same on both dates. For the reasons stated in ruling upon the objection to valuation of the 750 shares, the court overrules subdivision (a) of the objection.
The remainder of the sixth objection is directed to the distribution of the corporate stock to the widow in partial satisfaction of her legacy. Insofar as the objection relates to the authority of the executors to distribute the stock at the value fixed in the Federal estate tax proceeding, it is overruled for the reasons hereinabove stated. The objectant also contends that the distribution of stock to the widow was improper because it reduced the estate from a majority stockholder to a minority stockholder and transferred effective control of the corporation to the widow, who was one of the executors. It is patent that the testator intended his wife to have a strong voice in the corporate affairs. Prior to his death she was a director of the corporation and owner of over 20% of its outstanding shares. She is one of the four executors. The will requests the executors to vote the shares to enable the widow to act as an officer and director of the corporation and expresses the wish that she receive compensation for her services. It explicitly directs that during the lifetime of the widow the corporate shares may not be sold without her consent in writing. It further directs that in the event that the widow shall sell her shares of stock at any time, the executors or trustees shall, if requested to do so in writing by her, sell the estate’s shares on substantially the same terms and conditions as the sale made by her. The executors and trustees are absolved from any responsibility in connection with such a sale. The shares of stock in this corporation constitute the principal asset of the testator. The outright legacy to the testator’s wife is the largest general legacy in the will. When, therefore, we read in paragraph sixth the grant of authority to satisfy the bequest by distributing assets owned by him, valued as in the tax proceeding, we must assume that he knew the bequest would be satisfied by transfer of the corporate shares and that in all probability majority control would pass to her. The objectant’s contention that the. .executors should have liquidated corporate assets and" paid her in cash finds no justification in either the letter or the spirit of the will.
The objectant also complains because, in valuing the stock distributed to the widow, the executors failed to take into *92 account the fact that the transf.erred.shar.es would.give her. a majority of .-the outstanding-shares-and failed to assign added value because of that fact.' As stated hereinabove," the will fixes the method "of valuation-and-the- executors" were without 'authority-to adopt-a different-method; "The objecta-nt.ialso complains of a„ conflict; of interest "on "the part of the--widow ag ; executrix, as legatee, arid as .stockholder of the corporation. - It was’the‘will of the testator that gave her the status of executrix and legatee, and the will-not only recognized her status as stockholder but gave her power' to affect the estate’s interest in the "corporation. The- sixth objection is, therefore, overruled, insofar as it has not been withdrawn. . > v, ■ -r
■ The seventh- objection, directed to a different schedule, of the account, presents the same question of valuation and-distribution of shares of -stock to the "widow. It requires no separate ruling. - - : k ■ •- . ■
.The eighth objection is to-the-commissions "as computed in Schedule. K and to the allocation! thereof among the":executors. The-dbjectant does not specify any-particular error in the, computation of commissions. .The court will determine the amount of coinmissions- on the- settlement of the decree and will reserve -all questions relating to "computation -of .commissions until that ■time; - The accounting parties will file an affidavit showing the value of the assets on hand at the: time of settlement of the decree and also an allocation of commissions between principal and income in the proportion that each bears to the total commissions. ■At the time when four executors were in office, the law requires that.three full executors’ commissions “must be apportioned among them.-according to the services rendered by them, respectively. ’ ’ Two of the individual executors have agreed that the corporate executor is to-receive a stated sum and that the commissions to which they would be entitled upon an equal division shall be reduced accordingly. The basis of the agreement:is the additional work performed by the corporate "fiduciary.,;...On the-consent of all persons affected that this is a proper apportionment in’accordance with the services rendered by them, the "court will make-such apportionment. ;j„• ¡.
- The ninth objection is directed to various acts of the .-officers •and directors'-of Fur ’Merchants-Warehouse Corporation.;; As ¡stated iabbve, all of-the accounting "executors were directors,-of ■ the' corporation, and-the .--three-individuals -had been; directors .during the! testator’s lifetime; There was a fifth director, whp was nót améxecutor. -Maxwell Zabel-le, who. was both executor and-director.,-died .on May 3, 1958. After 'filling the-wacancy caused by his" death, there were two directors who were-not *93 .executors. The estate held a. majority of the.stock until March. 7, 1958 when the redemption and .distribution of ¡shares Anade the widow the dominant stockholder. There-Was¡ a third stockholder (who owned 200 shares out of 3,775 originally, oustanding. nnd 3,025 outstanding after March"7, 1958),“ but- her shares.-Were redeemed during the early part of 1960 in the. course of a -trial of an action against the corporation. . . - .¡" •
The law governing the duties of executor- directors and their liability for corporate action injuring the estate is still in ¡the process of definition and development. (See Cahn, Estate.Corporations, 86 U. of Pa. L. Rev. 136; Williams, The ■ Fiduciary Aspects of Estate Corporations, 57 Mich. L. Rev. 738.) In large part,- seeming divergencies of view may represent only different approaches to different fact situations. The problem before the court usually lies somewhere between the field-of the law of corporations and that of the-law of estate-and trust administration. Its solution will, generally "be dictated by. considerations of policy and the relative rights, and-interests..of7 estate-beneficiaries, creditors of the corporation, and. other-.stockholders, as well as the power, authority and opportunities of the executor director. Under all circumstances, however, the estate fiduciary is under the duty to supervise diligently, the administration of the corporate affairs insofar as the estate interest is concerned, the extent of his supervision or active participation being somewhat dependent "upon the opportunities available to. him. (See, Cahn, supra, p. 137; 2 Scott, Trusts [2d ed.], §§ 193, 193.2.) Despite any apparent differences in expression of the governing rules, the decisions, at least in this State,-quite generally reveal a policy of holding the estate fiduciaries responsible to the estate when, as directors of the corporation, they had the power to prevent injury to the estate and could, act to do so within the limit of their obligations and duties as directors. (Matter of Horowitz, 297 N. Y. 252; Matter of Auditore, 249 N. Y. 335; Matter of Auditore, 278 N. Y. 234; Matter of Doelger, 254 App. Div. 178, 183, affd. 279 N. Y. 646; Matter of Hubbell, 302 N. Y. 246.)
There is one point not discussed by counsel which, however, merits comment here. The widow is entitled to the entire income ■of the-residuary estate. She is president , of the; corporation, a ■director and an executor. She not only- does not complain of the corporate action; she actively defends it. All, or nearly all, of the challenged expenditures would appear to be -items generally chargeable against income. . The: income beneficiary, would be-the only party having any right to - object- to -the waste, of funds that would otherwise be payable to her. The only basis *94 for complaint on the part of the remainderman would be the failure of the directors to provide, out of income, such reserves as would be reasonably required under the particular circumstances. (See Matter of Hubbell, supra, p. 260; also 38 Col. L. Rev. 942; 47 Yale L. J. 1026.) There is no discussion as to whether any reserves should be provided, or have been provided, or have been in a sufficient amount. The objection of the remainderman should not be directed to improper payments out of income of the corporation but rather to the failure of the directors to retain sufficient of the income to protect the remainder interests. There is not sufficient evidence in the record to permit the court to rule upon such an objection, if made. Inasmuch as all parties have directed their argument to the propriety of the charge, the court will rule thereon.
Subdivision (a) of objection ninth relates to the payment of compensation of Maxwell Zabelle who had been the accountant for the corporation and who, during the lifetime of the decedent, had received an annual salary of $2,500 for services to the corporation. After the death of the decedent he was paid a salary of $7,500 from the corporation. His services were greatly increased after the testator’s death, particularly with respect to the supervision of the investment account. After Mr. Zabelle’s death, the payment to others for like services have been substantially the same as the amount paid to him. The court holds that the salary was reasonable and the objection is overruled.
Subdivision (b) is to the employment of Irving Warren by a wholly owned subsidiary at a salary of $5,000 a year. At the time of his employment he was married to the testator’s widow. The corporate minutes show that he was originally employed at the specified salary to perform designated services relating to the real estate and to any other real estate that might constitute a profitable corporate investment. In his argument the object-ant charges that Mr. Warren was paid $10,000 a year and that his services were not worth anything at all. The evidence in the record shows that he performed the services for which he was employed. It is undisputed that the widow received a salary of $10,000 a year from the corporation and that while she continued to hold office in the corporation, she nevertheless relinquished all salary from the -time that her husband was employed. The will provided that the widow be compensated by the corporation for her services. Objectant’s counsel stated at the hearing that he made no objection to- the payment of $10,000 annually to the widow and would have no objection if *95 she had been employed to perform the same services - that her husband had been engaged to perform. Inasmuch as she relinquished her salary during the period that her husband was paid, and inasmuch as it was stated that the payment was wholly from income, the objectant has not been harmed by the amount paid to Mr. Warren, even if such services could have been procured from another for a smaller compensation. The objection is overruled.
Subdivision (c) is, according to the pleading, to a charitable donation of $1,000. In the course of the hearing and the argument, it appears that donations were regularly made to charities, including a donation of $3,500 to the Foundation which is- a legatee under the will. Donations of money by the executor directors are improper to the extent that they diminish the remainder interest in the corporation. To the extent that they are paid from income of the trust fund, the income beneficiary’s acquiescence protects the fiduciaries from surcharge. Income of the corporation and income of the estate may not always be the one and the same thing. The widow has the right to make demand upon the directors whenever they fail to pay to the estate such income as is properly hers. Unless the payment to the charities encroaches upon funds which the objectant has the right to compel the directors to hold in the corporate treasury, he has no status to complain. There is no evidence in the record that would indicate the source of these payments. The executors are directed to file an affidavit which will specify the source of such contributions. If paid from income, the objection will be overruled unless the objectant demands a further hearing to submit proof of injury to principal.
Subdivision (d) has been withdrawn. Subdivision (e) is in general terms to any act of waste committed by the directors. As particularized, it is directed to the act of the executors in reducing the annual rent of $65,000 for the warehouse by an amount equal to one month’s rent. The lease was made by the decedent. The practice of granting the reduction was initiated by him. The reasons which moved the directors to continue the practice were based upon their business judgment of the need for such reduction and the possible consequences of a failure to continue the abatement. The court cannot say that the decision of the directors was unreasonable and unjustified. It cannot say that the corporation would not have been injured by a refusal to continue the abatement. Certainly the testator could not fairly have been charged with making a gift to the tenant of the reduced amount. The confirmation of his judgment and *96 continuance of the practice • cannot be - regarded as merely a gratuitous conveyance of corporate funds. The objection is overruled.-'--'...... .....
• - The.'eleventh, twelfth and-thirteenth objections are-general, repétitivé and require no separate ruling.
- An additional objection was interposed at the opening -of the trial. It is directed to ‘1 the failure of the Executors and Directors of Fur Merchants Warehouse Corporation to accept the' offer to purchase the real property of the Corporation made on or about January 9, 1959, for One Million Dollars cash, or in the alternative to sell the stock of the Corporation for the offered-price, to the damage of the Estate and the Corporation.” Insofar as the objection is directed to failure to sell the shares of -stock, it is overruled. Article tenth' of the will specifically prohibits the sale of the stock without the written consent of the widow. She did not give any consent to such sale'. Under the terms' of the will, she cannot be compelled to do so.
The third stockholder, Mrs. Edna Lemle, had instituted a suit against the corporation and others to compel the corporation to distribute dividends commensurate with its ability to pay dividends. She-claimed that dividends- of one million" and a half - dollars should be distributed. There was a dispute between her-attorney- and the attorneys for the directors over the value of the real-property owned by the corporation. It was to her interest, of course, that the realty be valued as high as possible. On January 9, 1959, her attorney, acting on behalf of Henry C. Lemle and others, stated that he - was authorized to offer $1,000,000 in" cash for the "real property or - $700 a share for the shares of stock. The relationship between this offer- and the lawsuit was indicated on the -face of-the letter, which contained the title of-the Action. Mrs.-Letiile’s relationship to: -the person heading the syndicate is not stated; ■ The offer- was, -by its terms, to remain' open until January 23, 1-959, and it was subsequently extended-to January 30, 1959.
The directors were suspicious of the offer'in view of the pending lawsuit, but they' decided to treat it as made in good faith. Their attorneys discussed with the attorney for the stockholder the tax implications of a- sale of the realty and the possibility of minimizing the taxes. The corporation owned securities exceeding one and a half million- dollars in value,- in -addition to the real restate. • The executor attorney discussed with the attorney for the stockholder possible ways of completing the sale'without incurring taxes-to the corporation and to the stockholders. The attorney executor wrote to the' attorney for the stockholder on *97 January 29, stating that his clients were ready to proceed with a plan of. liquidation predicated upon the offer to purchase the property for $1,000,000. There had been discussion between the attorneys on a number of occasions. On February 5, one of the attorneys for the executors wrote to the attorney for the stockholder to arrange a discussion of matters relating to the sale, and he was informed by the latter that the group headed by Lemle “ no longer was in a position to maintain $1,000,000 ready and available for use and that the group seemingly had disbanded at or about the time ” the attorney for the stockholder conversed on the telephone with the attorneys for the estate. The attorney for the stockholder admits that he does not know who the other members of the group were, and that he knew that Mr. Lemle was not personally putting up the money. He, therefore, is in no position to know whether the cash was ever actually available for the purchase.
The directors of the corporation at no time manifested any inclination to refuse the offer for purchase of the realty. At all times they indicated, through their attorneys, that they wished to accomplish the sale in a way that would he most beneficial to all of the stockholders. Prudence would dictate that the directors seek legal advice as to the manner of making the sale for the best interest of all concerned, and that their attorneys explore methods of minimizing taxes. The offer, assuming that it was at all times a bona fide offer, expired after a very limited period, and there was no disposition on the part of the group to pay any amount thereafter for the real property. Under all of the circumstances the court finds that the directors acted reasonably and prudently. There being no negligence or wrongdoing on the part of the directors, there is no basis for surcharging the executors. The additional objection is, therefore, overruled.